NOTICE

Decision filed 01/07/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200236-U

NO. 5-20-0236

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| CHRISTOPHER S., | ) | Madison County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 10-D-1126 |
| | ) | |
| AIMEE S., n/k/a Aimee P., Deceased, | ) | |
| | ) | |
| Respondent | ) | Honorable |
| | ) | John B. Julian, |
| (Christopher P., Proposed Intervenor-Appellee). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appeal is dismissed for lack of appellate jurisdiction where the trial court made no special finding of immediate appeal in accordance with Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016), where the indirect civil contempt order entered by the court did not impose any sanctions, and where the orders entered by the court were not final orders allocating parental responsibilities.

¶ 2 The appellant-father, Christopher S., the biological father of B.S. and E.S., appeals the orders entered by the circuit court of Madison County, which required him to return E.S. to the appellee-stepfather, Christopher P., E.S.'s stepfather, and found him in

1

indirect civil contempt for his failure to abide by those orders. On appeal, the appellant-father argues that by requiring him to return E.S. to the appellee-stepfather, the court had erroneously allocated parental responsibilities to a nonparty stepparent without first considering whether the stepparent had standing to request an allocution of parental responsibilities. In response, the appellee-stepfather contends that this court does not have jurisdiction under Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016) where the trial court made no special finding of immediate appeal, where the civil contempt order did not impose any sanctions, and where the orders were not final orders allocating parental responsibilities. For the following reasons, we dismiss the appeal for lack of appellate jurisdiction.

¶ 3                          I. BACKGROUND

¶ 4     The appellant-father, Christopher S., is the biological father of B.S., born August 21, 2003, and E.S., born December 14, 2007. Aimee P. was the children's biological mother. The appellant-father and Aimee P. were married in June 2000. However, in October 2010, the appellant-father filed a verified petition to dissolve the marriage. In October 2012, the trial court entered a judgment of dissolution of the marriage, a marital settlement agreement, and a joint parenting plan. In the marital settlement agreement, the appellant-father and Aimee P. agreed to joint custody of the minor children with Aimee P. being designated as the primary residential parent. The appellant-father received visitation with the minor children every other weekend during the school year, one night of the week during the school year, every other week during summer, and alternate

2

holidays. The appellant-father and Aimee P. shared decision making, and the appellant-father was ordered to pay child support.

¶ 5    On August 15, 2016, the appellant-father filed a petition to modify the joint parenting plan because he was planning on relocating to Las Vegas, Nevada. On December 7, 2016, the appellant-father filed a petition for temporary relief for additional parenting time with the minor children, asserting that he had not seen the minor children since August 21, 2016, that he was unable to exercise his regular parenting time while living in Nevada, and that Aimee P. had refused to allow him additional parenting time. On September 13, 2018, the appellant-father filed a petition to remove the minor children to Nevada. During this time, the parties both remarried; Aimee P. married the appellee.

¶ 6    On July 7, 2020, before the appellant-father's petition to modify the joint parenting plan was decided, he filed a suggestion of death, which informed the trial court that Aimee P. had died on July 6. That same day, he also filed a petition for allocation of parental responsibilities and time, which indicated that the minor children were residing with Aimee P. before her death and alleged that it was in their best interests to allocate parental responsibilities and time to him. On July 28, 2020, the appellee-stepfather filed a motion to intervene and a stepparent petition for allocation of parental responsibilities pursuant to section 601.2(b)(4) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/601.2(b)(4) (West 2018)). In the motions, he argued that Aimee P. had the majority of the parenting time with the minor children while the appellant-father lived in Nevada, that the appellant-father exercised a "scarce amount" of parenting time, and that the appellant-father would not see the children for months at a time. The motions noted,

in contrast, that the appellee-stepfather had provided for the care, control, and welfare of the minor children while they lived with him and their mother, the children had expressed a strong preference to continue living with him, and it would be in their best interests to continue living with him in Illinois where they had extended family. Additionally, the appellant-father, without notice, removed E.S., the youngest child, from Aimee P.'s family's care after her funeral, he refused to allow the child to communicate with her older brother and family in Illinois, and it was believed that the appellant-father had no permanent address and lived with E.S. in a motorhome during this time. The appellee-stepfather requested that the court enter temporary and permanent orders granting him sole parental responsibilities and parenting time, requiring the appellant-father to immediately return E.S. to her home, and enjoining the appellant-father from removing the children from the appellee-stepfather's care in the future.

¶ 7 On July 31, 2020, the trial court scheduled a hearing for August 7, 2020. On August 5, 2020, the appellant-father filed a motion to dismiss the motion to intervene and stepparent petition for allocation of parental responsibilities, arguing that before Aimee P.'s death, the appellant-father and Aimee P. had joint custody of the minor children but that he now had sole custody of the children since the joint custodian was deceased. He contended that a stepparent must first establish standing before being permitted to seek an allocation of parental responsibilities and that the appellee-stepfather had not alleged any facts that would permit him to intervene in this case. The appellant-father argued that E.S. had been in his physical custody since Aimee P.'s death; that although he had legal custody over the oldest child, he had minimal communication with B.S., who had been

4

staying in various places; and that he never voluntarily relinquished custody over the children. The appellant-father also filed a motion for him to appear telephonically, electronically, or via video conferencing because he had just started new employment in Nashville, Tennessee, and had not accrued any paid time off.

¶ 8 On August 7, 2020, the trial court held a hearing, and, at the beginning of the hearing, the appellee-stepfather's counsel noted that the court had previously directed the appellant-father to be present at the hearing and return E.S. with him but that neither the appellant-father nor E.S. was present. The court indicated that it was appropriate that the appellant-father was available via telephone since there was no evidentiary hearing that day. However, the court noted that it did want E.S. returned to the home that she had been living for five years before the appellant-father improperly relocated her. In response, the appellant-father's counsel argued that the appellee-stepfather was not a party to the case and had not been granted leave to intervene and that the court was required to hold a hearing on standing before allowing the appellee-stepfather to intervene in the case. The appellee-stepfather's counsel contended that he had pled standing in his motion to intervene and that standing was based on the appellee-stepfather being the minor children's stepfather and that the minor children had lived with him for a period of years before Aimee P.'s death. The court stated that the parties would have an opportunity to pursue those issues in more detail in the future but that it sought to "defuse a situation" that had suddenly come up and ordered the appellant-father to return E.S. to the appellee-stepfather within 48 hours. The court refused to enter a Rule 304(a) finding for immediate appeal. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The court then

5

entered a written order, again requiring the appellant-father return E.S. to the appellee-stepfather's physical care within 48 hours to maintain the status quo. The court noted that this order was a temporary order and scheduled a hearing on the petition to intervene.

¶ 9 That same day, the appellant-father filed a motion to reconsider and vacate the trial court's order, arguing that the court did not have jurisdiction to enter any orders with regard to the appellee-stepfather because he had not been granted permission to intervene and was not a party to the case. The appellant-father again argued that before the appellee-stepfather could be allowed to proceed or ask for any relief from the court, the court must determine that he had standing to request that relief.

¶ 10 On August 10, 2020, the appellee-stepfather filed a petition for adjudication of indirect civil contempt, arguing that the appellant-father had willfully refused to comply with the trial court's August 7 order in that he had failed to return E.S. to the appellee-stepfather as ordered, that this was the second time that he had failed to return E.S. after being ordered to do so, and that he had failed to disclose E.S.'s location and had blocked all of her contact with her family members in Illinois. The appellee-stepfather requested that the court find the appellant-father in indirect civil contempt of the court and sanction him by requiring him to pay the appellee-stepfather's attorney fees and costs and sentencing him to jail for an indeterminate term. In response, the appellant-father filed a motion to dismiss and strike the appellee-stepfather's petition for adjudication of indirect civil contempt based on the fact that the appellee-stepfather had not been granted permission to intervene so was not a party in the case. The appellant-father contended that the appellee-stepfather could not file any motions or pleadings requesting relief in

6

this case until the court determined whether he had standing and was permitted to intervene.

¶ 11 That same day the trial court held a hearing on the matters. The appellee-stepfather's counsel contended that he had alleged facts that would support intervention, that the appellee-stepfather fit the qualifications necessary to be a party to claim parenting time and parental responsibility, that E.S. had spent the majority of her time with the appellee-stepfather and Aimee P. before Aimee P.'s death, that E.S. wanted to remain with the appellee-stepfather, and that it was in her best interests to remain with the appellee-stepfather. He believed that E.S. was in Tennessee but did not know her exact location as the appellant-father had not been allowing her any contact with her family members in Illinois. Counsel contended that the court had authority to order the appellant-father to return E.S. to Illinois because the appellant-father submitted himself to the court's jurisdiction by filing a petition to allocate parental time and responsibilities.

¶ 12 In response, the appellant-father's counsel requested that the argument of opposing counsel be stricken because the appellee-stepfather was not a party to the case. Counsel argued that the appellant-father currently had custody over E.S. pursuant to the trial court's previous joint parenting order, and the court could not reach the best interest issue until the standing issue was resolved. After hearing arguments, the court stated that it was denying the appellant-father's motion to strike and motion to reconsider but that it was granting the appellee-stepfather's petition for adjudication of indirect civil contempt. In making this decision, the court noted that it was entering a temporary order to get back to the status quo before E.S. was taken out of the state. The court then asked the

7

appellant-father's counsel if she knew where E.S. was located, but she indicated that she did not.

¶ 13    Also, on that same day, the trial court entered a written order, denying the appellant-father's motion to reconsider and motion to dismiss and strike. The order stated that the appellant-father had again failed to return E.S. to Illinois and that his counsel did not know where he was keeping E.S. The court found the appellant-father in willful civil contempt of the court's previous order and ordered him to return E.S. to the appellee-stepfather on or before August 12, 2020. The court indicated that if the appellant-father failed to return E.S. as ordered, then a body attachment would issue for him to be remanded to the custody of the Madison County Sheriff's Department, and he would be held until he complied with the order. The court also ordered the appellant-father to report E.S.'s location to his attorney, who was then directed to report the address to opposing counsel within 24 hours. The court indicated that all prior matters remained as previously set.

¶ 14    On August 11, 2020, the appellee-stepfather filed a motion for immediate setting on the motion to intervene and other relief, requesting that the trial court hold a hearing on August 12 and require the appellant-father to appear with E.S. That same day, the appellant-father filed a motion for stay of enforcement of the court's order pursuant to Illinois Supreme Court Rule 305 (eff. July 1, 2017). Contemporaneously with the motion, the appellant-father filed a notice of appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). On August 12, 2020, the court held a hearing on the motion for immediate setting and motion to stay enforcement of its order. At the hearing,

the appellee-stepfather's counsel argued that the petition for leave to appeal was premature because the orders that the appellant-father appealed were not final orders and a contempt finding, by itself, was not appealable under Rule 304(b)(5) without an imposition of penalties or sanctions. The court stayed the proceedings, stating that the decision as to whether the appeal was premature was "one that [was] going to be left up to the [a]ppellate court." The court then indicated that any other motions would be addressed when the time was ripe. The court also entered a written order, granting the appellee-stepfather's motion to stay and indicating that a stay would be in effect until there was a ruling on the appeal. On August 27, 2020, the appellant-father filed an amended notice of appeal pursuant to Rule 304(b)(5) and Rule 304(b)(6). Ill. S. Ct. R. 304(b)(5), (b)(6) (eff. Mar. 8, 2016).

¶ 15                                    II. ANALYSIS

¶ 16    In both his brief and motion that we ordered taken with the case, the appellee-stepfather contends that we lack jurisdiction to consider the merits of the appeal under Rule 304 because the trial court did not make a special finding allowing for immediate appeal; that although the court found the appellant-father in indirect civil contempt, it did not impose a penalty for the contempt findings; and that the court's orders were not final orders allocating parental responsibilities. In response, the appellant-father contends that this court should strike the appellee-stepfather's motion and brief because the appellee-stepfather has not been granted leave to intervene in the case and is therefore not a party.[1]

---

[1]The appellant-father filed a motion to strike the motion to dismiss or, in the alternative, deny the motion to dismiss, which was also ordered taken with the case by this court.

9

Alternatively, the appellant-father, acknowledging that this court may consider the appropriateness of its jurisdiction at any time, argues that we have jurisdiction over his appeal. The appellant-father first contends that we have jurisdiction under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) because the court imposed two sanctions with the contempt finding, *i.e.*, a body attachment and the order requiring the appellant-father to tender his address to the court. The appellant-father also argues that we have jurisdiction under Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016) because, by ordering the appellant-father to return E.S. to the appellee-stepfather, the trial court's orders modified the previously entered joint parenting plan and allocated parental responsibilities of the minor children to the appellee-stepfather.

¶ 17    As acknowledged by the appellant-father, we have a duty to *sua sponte* determine whether we have jurisdiction to decide issues presented on appeal. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 453 (2006). In his amended notice of appeal, the appellant-father states that we have jurisdiction over his appeal pursuant to Rule 304(b)(5) and Rule 304(b)(6). Rule 304 governs appeals from final judgments that do not dispose of an entire proceeding. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Rule 304(b)(5) makes immediately appealable, despite the pendency of other matters, "[a]n order finding a person *** in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). However, for an appellate court to assume jurisdiction under Rule 304(b)(5), the contempt order must impose sanctions upon the contemnor. *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008). Until the contempt order imposes a penalty, there is no basis for obtaining immediate appellate

10

jurisdiction under Rule 304(b)(5). *Id*. A "penalty" is a "[p]unishment imposed on a wrongdoer, [usually] in the form of imprisonment or fine." Black's Law Dictionary (11th ed. 2019); see also *In re Marriage of Schwieger*, 379 Ill. App. 3d 687, 689 (2008) (using the same definition contained in an earlier edition).

¶ 18    Here, the trial court's August 10, 2020, order found that the appellant-father was in willful contempt of the court for his failure to return E.S. to the appellee-stepfather's care. The court stated that if the appellant-father failed to produce E.S. as ordered, then a body attachment would issue to remand him to the custody of the Madison County Sheriff's Department, and he would be held until he complied with the order. The court also ordered the appellant-father to provide the address where E.S. was staying to his counsel, so it could be provided to the appellee-stepfather's counsel.

¶ 19    First, the trial court's announcement that it would issue a body attachment if the appellant-father failed to comply with its order was not the issuance of a penalty. Instead, the court merely announced the penalty that would be imposed in the future for the appellant-father's continued noncompliance with the court's order. Further proceedings would have been necessary to determine the appellant-father's compliance with the court's orders and whether a body attachment should issue.

¶ 20    Additionally, ordering the appellant-father to provide the address where E.S. was currently living was not a penalty as it was not a punishment meant to ensure his future compliance with the trial court's orders. See *In re M.S.*, 2015 IL App (4th) 140857, ¶ 35 (the purpose of a civil contempt order is to compel future compliance with a court order). E.S., who was the subject of the pending petitions for allocation of parenting time and

11

parental responsibilities, was living with the appellant-father in another state. However, her location was unknown because the appellant-father refused to give her address to the court and refused to allow her any contact with her Illinois family. The court asked the appellant-father's attorney if she knew where E.S. was living, and she said that she did not. Thus, it was necessary for the court to order the appellant-father to provide E.S.'s address to determine her location. Then, the court could have held further proceedings on the pending petitions seeking a determination on the allocation of parental responsibilities. Disclosure of the address of minor children subject to a pending allocation of parental responsibilities petition would be generally required and a routine matter, not a punishment designed to compel future compliance with court orders. Therefore, because the trial court never actually imposed a penalty against the appellant-father, there was no final order entered in accordance with Rule 304(b)(5) in the contempt proceeding. See *Fidelity Financial Services, Inc. v. Hicks*, 267 Ill. App. 3d 887, 890 (1994) ("A contempt order is interlocutory and, thus, nonappealable, unless the court imposes a sanction for any contemptuous act.").

¶ 21    The appellant-father next contends that we have jurisdiction under Rule 304(b)(6). As noted above, Rule 304 governs appeals from *final* judgments that do not dispose of the entire proceeding. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Rule 304(b)(6) allows for the immediate appeal from any "custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act [citation] or Illinois Parentage Act of 2015 [citation]." Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016). An allocation of parental responsibilities judgment

12

is a judgment that allocates both parenting time and significant decision-making responsibilities with respect to the minor children. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 29. Thus, Rule 304(b)(6) extends to final orders that allocate parenting time and significant decision-making responsibilities and orders modifying those judgments. See *In re Marriage of Harris*, 2015 IL App (2d) 140616, ¶ 16 (finding that Rule 304(b)(6) is limited to final orders of custody or allocation of parental responsibilities judgments); see also Ill. S. Ct. R. 304(b)(6), Committee Comments (adopted Feb. 26, 2010) (Rule 304(b)(6) is limited to "permanent determination[s] of custody"). " 'An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)).

¶ 22 Here, the trial court's orders entered on August 7 and August 10, which required the appellant-father to return E.S. to the home that she lived in before her mother's death, were not final orders. First, we note that the August 7 order specially stated that it was a temporary order and that the appellee-stepfather, in his brief, acknowledges that this was a temporary order. Also, the August 10 order, which gave a future compliance date of August 12, was not a final order allocating parental responsibilities. At the hearings where these orders were entered, the court made clear its reasoning for entering the two orders. On August 7, the court stated that it wanted E.S. back in the home that she had lived for five years before the appellant-father relocated her. Then, the court indicated that a subsequent hearing on the petitions for allocation of parenting time and parental

responsibilities would be held at a later time. The court further stated that it was attempting to defuse a situation that had suddenly come up by ordering the appellant-father to return E.S. back to the appellee-stepfather and then it would set a further hearing on the pending petitions at an appropriate time.

¶ 23 At the August 10 hearing, the trial court again noted that it was attempting to enter a temporary order to return to the status quo before E.S. was removed from Illinois. Based on the above, the court's August 7 and August 10 orders were short-term, temporary orders meant to return E.S. to the home where she had been living before her mother passed away; these were not final orders allocating parental responsibilities. Thus, we conclude that Rule 304(b) does not provide a basis for this court's jurisdiction to consider the merits of the appeal. Moreover, the court's orders did not contain Rule 304(a) language to make them immediately appealable. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Accordingly, we conclude that the appellant-father's notice of appeal was premature and that we therefore lack jurisdiction to consider this appeal.

¶ 24 Because we find that we lack jurisdiction, we grant the appellee-stepfather's motion to dismiss the appeal for lack of jurisdiction, and we deny the appellant-father's motion to strike and for sanctions that were taken with the case. We also deny the appellee-stepfather's motion to dismiss appeal for mootness,[2] which argued that the appeal was moot because E.S. was returned to appellee-stepfather after the appellant-father was arrested for aggravated domestic assault.

---

[2]This motion was also ordered taken with the case by this court.

14

¶ 25   In his brief, the appellee-stepfather requested this court award him sanctions pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) because the appellant-father's appeal was frivolous and for the purpose of delaying the enforcement of the trial court's order to return E.S. to Illinois.  However, "[t]he imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court."  *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87.  Because we do not find that sanctions are appropriate here, we deny the appellee-stepfather's request.

¶ 26                               III. CONCLUSION

¶ 27   For the foregoing reasons, we grant the appellee-stepfather's motion to dismiss appeal that was taken with the case and dismiss this appeal for a lack of appellate jurisdiction.


¶ 28   Motion granted; appeal dismissed.